IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
SANTA FE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § § | |
| v. § | Civil Case No.: 6: 09-cv-1021 |
| § § | |
| CHARLES R. KOKESH § § § | |

# COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Charles R. Kokesh ("Kokesh") alleges as follows:

**Summary**

1. From at least 1995 through July 2007, Kokesh systematically misappropriated approximately $45 million from four Commission-registered business development companies ("BDCs")—Technology Funding Medical Partners I; Technology Funding Partners III, L.P.; Technology Funding Partners IV, L.P.; and Technology Funding Partners V, L.P. Kokesh controlled two now-defunct Commission-registered investment-adviser firms, Technology Funding Ltd. ("TFL") and Technology Funding, Inc. ("TFI") (collectively, the "Kokesh Advisers"), which, in turn, controlled and provided investment advice to the BDCs pursuant to advisory contracts. Acting by and through the Kokesh Advisers, Kokesh misappropriated the funds by causing the BDCs to pay illegal distributions, performance fees, and expense reimbursements to the Kokesh Advisers. To conceal the scheme, Kokesh caused the Kokesh

Advisers to distribute misleading proxy statements to BDC investors and to file false Commission reports on behalf of the BDCs.

2. By reason of the foregoing, Kokesh violated Section 37 of the Investment Company Act of 1940 ("Investment Company Act") [15 U.S.C. § 80a-36] or, in the alternative, Section 57 of the Investment Company Act [15 U.S.C. § 80a-56] and aided and abetted violations of Sections 13(a) and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m and 78n] and Rules 12b-20, 13a-1, 13a-13, and 14a-9 [17 C.F.R. §§ 240.12b-20, 13a-1, 13a-13, and 14a-9] thereunder and Sections 205, 206(1), and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-5, 80b-6(1), and 80b-6(2)].

3. In the interest of protecting the public from any further violations of the federal securities laws, the Commission brings this action against the Defendant, seeking permanent injunctive relief, disgorgement plus prejudgment interest, civil money penalties, and all other equitable and ancillary relief deemed necessary by the Court.

**Jurisdiction and Venue**

4. The Commission brings this action under Section 42 of the Investment Company Act [15 U.S.C. § 80a-41], Section 21(e) of the Exchange Act [15 U.S.C. § 78u(e)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], seeking to restrain and enjoin permanently Kokesh from engaging in the acts, transactions, practices, and courses of business alleged herein.

5. This Court has jurisdiction over this action under Section 44 of the Investment Company Act [15 U.S.C. § 80a-43], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

6. Kokesh, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, transactions, practices, and courses of business described in this Complaint.

7. Venue is proper because transactions, acts, practices, and courses of business described below occurred, and the Defendant resides, within the jurisdiction of the District of New Mexico.

**Parties**

8. Plaintiff Commission is an agency of the United States of America charged with enforcing the federal securities laws.

9. Defendant Kokesh, 61 years old, resides in Santa Fe, New Mexico.

**Statement of Facts**

*Kokesh Formed the Kokesh Advisers and the BDCs*

10. TFL, a California limited partnership based in El Dorado Hills, California, was registered with the Commission as an investment adviser from May 11, 1987, to January 9, 2007. Kokesh formed TFL in 1984 and owned more than 95% of it from at least January 1, 1995, through the date of its dissolution. TFL, now defunct, served as an investment adviser to the BDCs.

11. TFI, a Delaware corporation based in Santa Fe, New Mexico, was registered with the Commission as an investment adviser from May 11, 1987, to January 3, 2007. TFI was formed at Kokesh's direction and was a wholly-owned subsidiary of TFL. TFI, now defunct, served as an investment adviser to the BDCs.

12. Kokesh controlled the activities of investment advisers TFL and TFI (the "Kokesh Advisers") throughout their existence.

13. In the 1980s and 1990s, Kokesh formed four closed-end investment companies—Technology Funding Medical Partners I ("TFMP"); Technology Funding Partners III, L.P ("TFP III"); Technology Funding Partners IV, L.P. ("TFP IV"), and Technology Funding Partners V, L.P. ("TFP V"). Each of these entities registered a class of securities with the Commission pursuant to Section 12 of the Exchange Act. At Kokesh's direction, each entity elected to be regulated as a BDC under the Investment Company Act. A BDC is a closed-end investment company—regulated under Sections 55 through 65 of the Investment Company Act—engaged in the business of investing in, and making significant managerial assistance available to, small, developing companies.

14. According to their offering materials, the four BDCs were formed "to provide investors with the opportunity to participate with a modest investment in venture capital investments that are generally not available to the public and that typically require substantially larger financial commitments." Between 1987 and 1993, the four BDCs combined raised approximately $128 million from at least 21,000 investors located throughout the United States. The BDCs invested primarily in private start-up companies involved in technology, biotechnology, and medical diagnostics.

15. Each BDC was governed by a limited partnership agreement that served as the advisory agreement between the BDC on the one hand and the Kokesh Advisers on the other. The Kokesh Advisers served as the general partners, while investors purchased limited-partnership interests. Under the terms of each advisory agreement, the Kokesh Advisers were guaranteed an asset-based management fee of 6% of capital invested for the first year, 4% of capital invested for the second year, and 2% of the capital invested in the third through fifth years. Starting in the sixth year, the Kokesh Advisers were to receive a quarterly asset-based

management fee of 0.25% of the fair value of the BDC's assets.  In addition to this fixed fee, each advisory agreement provided that the Kokesh Advisers were entitled to receive a profit allocation, or "performance fee," of 20% of the BDC's portfolio gains.  Finally, each advisory agreement provided that the BDC was required to reimburse the Kokesh Advisers for certain operational costs, which were defined as "expenses related to the selection of Portfolio Companies or to proposed investments, even if the proposed investments ultimately are not undertaken by [the BDC]."

*The Kokesh Advisers Obtained Illegal Reimbursement from the BDCs*

16. Each advisory agreement specifically prohibited the Kokesh Advisers from receiving reimbursement from the BDC for "rent" or for "salaries and fringe benefits incurred by or allocated to any Controlling Persons" of the Kokesh Advisers.  In fact, each advisory agreement expressly provided that reimbursement for rent and for salary and fringe-benefit payments to Controlling Persons was covered by the fixed management fee.

17. "Controlling Person" was defined in the advisory agreements as "[a]ny person, whatever his or her title, who performs functions for the Managing General Partners or their Affiliates similar to those of the chairman or member of the board of directors; executive management, such as a president, executive vice president or senior vice president, corporate secretary, or treasurer; or who holds a 5% or more equity interest in the Managing General Partners or their Affiliates or a Person having the power to direct or cause the direction of the Managing General Partners or their Affiliates, whether through the ownership of voting securities, by contract, or otherwise."

18. Between 1995 and 2000, the Kokesh Advisers, acting by and through Kokesh, caused the four BDCs combined to reimburse the Kokesh Advisers at least $15 million for rent

and for salary and fringe-benefit payments to Controlling Persons at the Kokesh Advisers in violation of the advisory agreements.  In addition, in 2000 and 2002, the Kokesh Advisers, acting by and through Kokesh, caused the four BDCs combined to reimburse the Kokesh Advisers over $2 million for rent and for salary and fringe-benefit payments to Controlling Persons incurred in 1997 and 1998.

*Kokesh and the Kokesh Advisers Took Illegal Distributions from the BDCs*

19. Pursuant to each advisory agreement, the BDC was required to pay 99% of any distribution to investors and 1% to the Kokesh Advisers until the investors received a complete return of their initial investment.  Thereafter, investors were entitled to receive 80% of the distributions, and the Kokesh Advisers were entitled to receive 20% of the distributions.  The only exception to this distribution structure was for distributions to cover tax liabilities associated with the sale of BDC assets.  Under this exception, distributions could be made to the Kokesh Advisers in certain circumstances without a corresponding distribution to investors.

20. From 1995 through 1999, the Kokesh Advisers, acting by and through Kokesh, caused BDCs TFP III, TFP IV, and TFP V combined to pay $760,000 in distributions to the Kokesh Advisers without corresponding distributions to the investors.  In reality, there were no corresponding tax liabilities to warrant any such distribution.  These payments, therefore, violated the advisory agreements.

21. Moreover, in 2000, the Kokesh Advisers, acting by and through Kokesh, caused BDCs TFP III, TFP IV, and TFP V combined to pay approximately $6 million in distributions to the Kokesh Advisers without corresponding distributions to the investors.  Again, there were no tax liabilities to justify such payments, so they violated the advisory contracts.  Most of these

payments flowed through TFL directly to Kokesh. Indeed, the Kokesh Advisers took the distributions, knowing that no tax liability had been incurred to warrant them.

*The Kokesh Advisers Charged the BDCs Illegal Performance Fees*

22. Section 205 of the Advisers Act generally prohibits investment advisers from entering into advisory contracts that provide for compensation based on a share of capital gains upon, or capital appreciation of, a client's assets ("performance fees"). Under Section 205(b)(3) of the Advisers Act, however, an investment adviser may enter into a contract with a BDC that provides for performance-based compensation if "the compensation provided for in such contract does not exceed 20 per centum of the realized capital gains upon the funds of the business development company, computed net of all realized capital losses and unrealized capital depreciation."

23. Here, the BDC advisory agreements provided that the Kokesh Advisers were entitled to receive "no more than 20% of the Net Profit of the Partnership after taking into account all cumulative Net Loss." Acting by and through Kokesh, the Kokesh Advisers calculated net profit by combining both realized and unrealized gains in each BDC's portfolio. Because the calculation included unrealized capital gains, the Kokesh Advisers charged the BDCs higher performance fees than they were allowed to charge under Section 205(b)(3) of the Advisers Act.

24. The Kokesh Advisers also received other illegal performance fees from the BDCs, including payments for a bonus program (similar to a profit-sharing plan) for employees of the Kokesh Advisers called the Fund Participation Plan ("FPP"). The FPP provided for the payment of bonuses from the BDCs if the BDCs performed well. The Kokesh Advisers also paid Kokesh and other officers of the Kokesh Advisers significant additional amounts in bonuses. For

example, from 2000 to 2005, Kokesh received approximately $5.8 million in bonuses, all of which was paid out of BDC assets and which was based, at least in part, on the performance of the BDCs. These payments were beyond the performance fees the Kokesh Advisers were already receiving from the BDCs. These profit-sharing payments and bonuses were illegal because they constituted additional performance fees that did not comply with Section 205(b)(3) of the Advisers Act.

*Kokesh Distributed Misleading Proxy Statements on Behalf of the Kokesh Advisers*

25. After several years of illegally charging the BDCs for rent and for controlling-person salaries and fringe benefits described above, Kokesh and the Kokesh Advisers distributed a proxy statement to BDC investors in 2000 to amend each BDC advisory agreement to include rent and controlling-person salaries and fringe benefits as reimbursable operational costs. The proxy statements, which were signed by Kokesh, provided that the proposed changes in the advisory agreements would result in *some* additional expense reimbursements from the BDCs to the Kokesh Advisers.

26. The proxy statements, however, misrepresented the extent of the changes and the potential economic impact on the BDCs. First, the proxy statements falsely represented that Kokesh had been the only "controlling person" under the original terms of the advisory agreements. The proxy statements did not disclose that the BDCs had reimbursed the Kokesh Advisers for compensation received by other employees that qualified as controlling persons in the amounts of $2,398,733 in 1998, $1,654,641 in 1999, and $2,366,611 in 2000.

27. Second, the proxy statements materially understated the amount of compensation paid to Kokesh in prior years. They listed Kokesh's compensation as $200,783 in 1998, $165,774 in 1999, and $297,219 in 2000. These figures, however, only included payments from

TFI, and did not include payments from TFL.  If the proxy statement had properly included payments from TFL, Kokesh's compensation would have been listed as $392,632 in 1998, $330,983 in 1999, and $1,022,293 in 2000.

*Kokesh Concealed Illegal Payments with False Commission Reports*

28. Acting by and through Kokesh, the Kokesh Advisers filed Form 10-K annual reports and Form 10-Q quarterly reports with the Commission on behalf of the BDCs.  The Forms 10-K for BDCs TFP III, TFP IV, and TFP V for the period ended December 31, 2000, signed by Kokesh, indicated that these BDCs combined made $6 million in tax distributions to the Kokesh Advisers.  Because there was no taxable event to warrant such payments, the $6 million payments were, in fact, illegal payments, not tax distributions.  Therefore, these BDCs' Forms 10-K for 2000 were false and misleading.

29. In addition, in each Form10-Q and 10-K for BDCs TFP III, TFP IV, and TFP V for the quarterly and annual periods ended March 31, 2001, through December 31, 2006, the financial statements showed that the Kokesh Advisers' capital account was negative.  These reports, however, did not disclose that this negative balance was caused by a phony tax distribution.  In addition, the reports did not disclose that this negative balance constituted a debt owed by parties related to the BDCs.  Therefore these reports were misleading.

## FIRST CLAIM

**Violations of Section 37 or, in the alternative, Section 57 of the Investment Company Act**

30. Plaintiff Commission re-alleges and incorporates paragraphs 1 through 29 of this Complaint by reference as if set forth *verbatim*.

31. Defendant, by engaging in the conduct described above, stole, unlawfully abstracted, unlawfully and willingly converted to his own use or to the use of another, or

embezzled moneys, funds, securities, credits, property, or assets of a registered investment company in violation of Section 37 of the Investment Company [15 U.S.C. § 80a-36].

32. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Section 37 of the Investment Company Act [15 U.S.C. § 80a-36].

33. In the alternative, Defendant by engaging in the conduct described above, while serving as a controlling person or closely affiliated person of a BDC within the meaning of Section 57(b) of the Investment Company Act [15 U.S.C. § 80a-56(b)], knowingly borrowed money or property from such BDC in violation of Section 57(a)(3) of the Investment Company Act [15 U.S.C. § 80a-56(a)(3)].

34. By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate Section 57 of the Investment Company Act [15 U.S.C. § 80a-56].

## SECOND CLAIM

**Violations of Section 13(a) of the Exchange Act and Rule 12b-20, 13a-1, and 13a-13**

35. Plaintiff Commission re-alleges and incorporates paragraphs 1 through 29 of this Complaint by reference as if set forth *verbatim*.

36. Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 13a-1 and 13a-13 [17 C.F.R. §§ 240.13a-1 and 240.13a-13], require issuers of registered securities to file with the Commission factually accurate annual and quarterly reports. Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] further provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they were made not misleading.

37. BDCs TFP III, TFP IV, and TFP V filed with the Commission and disseminated

to investors false and misleading quarterly and annual reports. In doing so, these BDCs violated Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [15 U.S.C. § 78m(a); 17 C.F.R. §§ 12b-20, 240.13a-1, and 240.13a-13].

38. Defendant knowingly or recklessly gave substantial assistance to these BDCs in their violations of these provisions.

39. Defendant aided and abetted the BDCs' violations of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 13a-13].

### THIRD CLAIM

### Violations of Section 14(a) and Rule 14a-9 of the Exchange Act

40. Plaintiff Commission re-alleges and incorporates paragraphs 1 through 29 of this Complaint by reference as if set forth *verbatim*.

41. Section 14(a) of the Exchange Act sets forth that it shall be unlawful to solicit any proxy in respect of any security registered pursuant to Section 12 of the Exchange Act in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. Exchange Act Rule 14a-9 prohibits the solicitation by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement that, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or that omits to state any material fact necessary in order to make the statement therein not false or misleading or necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

42. By reason of the foregoing, the BDCs solicited shareholder proxies using false and misleading proxy statements in violation of Section 14(a) of the Exchange Act [15 U.S.C. § 78n] and Rule 14a-9 [17 CFR § 240.14a-9].

43. Defendant knowingly or recklessly gave substantial assistance to these BDCs in their violations of these provisions.

44. By reason of the foregoing, Defendant aided and abetted violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n] and Rule 14a-9 [17 CFR § 240.14a-9] and, unless enjoined, will continue to aid and abet such violations.

## FOURTH CLAIM

### Violations of Section 205 of the Investment Company Act

45. Plaintiff Commission re-alleges and incorporates paragraphs 1 through 29 of this Complaint by reference as if set forth *verbatim*.

46. Section 205(a) of the Advisers Act provides that "[n]o investment adviser, unless exempt from registration pursuant to section 203(b), shall make use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, to enter into, extend, or renew any investment advisory contract, or in any way to perform any investment advisory contract entered into, extended, or renewed on or after the effective date of this title, if such contract . . . provides for compensation to the investment adviser on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client." Section 205(b)(3) of the Advisers Act provides that the foregoing provision shall not "apply with respect to any investment advisory contract between an investment adviser and a business development company . . . , if (A) the compensation provided for in such contract does not exceed 20 per centum of the realized capital gains upon the funds of the business development company over a

specified period or as of definite dates, computed net of all realized capital losses and unrealized capital depreciation . . . , and (B) the business development company . . . does not have a profit-sharing plan described in section 57(n) of title I of this Act."

47. By reason of the foregoing, the Kokesh Advisers violated Section 205(a) of the Advisers Act [15 U.S.C. § 80b-5].

48. Defendant knowingly or recklessly gave substantial assistance to the Kokesh Advisers in their violations of this provision.

49. By reason of the foregoing, Defendant aided and abetted violations of Section 205(a) of the Advisers Act [15 U.S.C. § 80b-5] and, unless enjoined, will continue to aid and abet such violations.

### FIFTH CLAIM

### Violations of Section 206(1) and 206(2) of the Advisers Act

50. Plaintiff Commission repeats and incorporates paragraphs 1 through 29 of this Complaint by reference as if set forth *verbatim*.

51. Defendant aided and abetted the Kokesh Advisers who as investment advisers, used the mails and means or instrumentalities of interstate commerce, directly and indirectly: (1) to employ devices, schemes or artifices to defraud clients or prospective clients; or (2) to engage in transactions, practices, and courses of business which operated as a fraud or deceit upon clients and prospective clients.

52. Defendant knowingly or recklessly gave substantial assistance to the Kokesh Advisers in their violations of these provisions.

53. By reason of the foregoing, Defendant aided and abetted the Kokesh Advisers violations and, unless enjoined, will continue to aid and abet violations of Sections 206(1) and 206(2) of the Investment Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court:

54. Permanently enjoin Defendant from any more violations of the foregoing provisions of the federal securities laws.

55. Order the Defendant to disgorge an amount equal to the funds and benefits obtained illegally, or to which he is otherwise not entitled, as a result of the foregoing violations, plus prejudgment interest on that amount.

56. Order the Defendant to pay civil monetary penalties in an amount determined appropriate by the Court pursuant to Section 42(e) of the Investment Company Act [15 U.S.C. §80a-41(e)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)] for the foregoing violations.

57. Order all equitable, ancillary, and other relief deemed just and proper by the Court.

Respectfully submitted,

DATED: October 27, 2009         **s/Timothy S. McCole**

TIMOTHY S. McCOLE
Plaintiff's Lead Attorney
Mississippi Bar No. 10628
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
Telephone: (817) 978-6453
FAX: (817) 978-4927
E-mail: McColeT@SEC.gov