**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**SECURITIES AND EXCHANGE COMMISSION,**

 **Plaintiff,**

v.                   **No. 09-cv-1021 SMV/LAM**

**CHARLES R. KOKESH,**

 **Defendant.**

## ORDER

THIS MATTER is before the Court sua sponte. The Court has reviewed the parties' proposed Statement of the Case [Doc. 108] at 1–6. Although the Court believes it is too long and detailed, the Court will give it as proposed—with a few modifications—to the jury once the jury is selected. However, for purposes of voir dire, the Court must tell the prospective jurors what the case is about, and the parties' proposed Statement of the Case is too lengthy for that purpose. The Court proposes to give the Brief Statement of the Case (below) to the potential jurors at the beginning of voir dire. Counsel should be prepared to discuss this at the pretrial hearing on October 3.

### Brief Statement of the Case

The Plaintiff in this case is the United States Securities and Exchange Commission, or the SEC. The SEC is the agency of the federal government that is responsible for enforcing the securities laws of the United States. The SEC filed this case against the Defendant, Charles Kokesh, alleging that he violated, and aided and abetted violations of, anti-fraud and other provisions of the securities laws.

The SEC claims that, from 1995 through July 2007, Mr. Kokesh misappropriated more than $34.9 million from four SEC-registered business-development companies. A business-development company, or "BDC," is a type of investment company. The SEC claims that Mr. Kokesh owned and controlled two SEC-registered investment advisory firms that provided investment advice to the BDCs. Written contracts, required by law, between the advisory firms and the BDCs specified in detail the fees and expenses that the advisory firms were allowed to receive from the BDCs for their services. The SEC claims that Mr. Kokesh controlled the advisory firms, as well as the BDCs' bank accounts, and caused the advisory firms to take money from the BDCs in violation of the contracts and in breach of fiduciary duties the advisory firms owed to the BDCs.

The SEC also claims that Mr. Kokesh caused the BDCs to file false and misleading SEC reports that concealed the truth about the money the advisory firms were receiving from the BDCs, and that he caused the BDCs to file false and misleading proxy statements. A proxy statement is a document that an entity, such as a BDC, uses to allow shareholders (or, in some cases, limited partners) to vote on issues requiring shareholder/partnership approval without requiring all those persons to attend a meeting in person. The SEC claims that Mr. Kokesh signed and disseminated false and misleading proxy statements to allow the advisory firms to receive reimbursement for officer salaries. The SEC claims that the proxy statements were false and misleading because they misrepresented the potential financial impact on the BDCs.

Finally, the SEC claims that Mr. Kokesh caused the advisory firms to enter, extend, renew, or perform contracts with the BDCs that contained illegal performance-fee provisions. The SEC claims that all of the above conduct constituted violations of various securities laws.

The SEC claims that, from 1995 through July 2007, Mr. Kokesh misappropriated more than $34.9 million from four SEC-registered business-development companies. A business-development company, or "BDC," is a type of investment company. The SEC claims that Mr. Kokesh owned and controlled two SEC-registered investment advisory firms that provided investment advice to the BDCs. Written contracts, required by law, between the advisory firms and the BDCs specified in detail the fees and expenses that the advisory firms were allowed to receive from the BDCs for their services. The SEC claims that Mr. Kokesh controlled the advisory firms, as well as the BDCs' bank accounts, and caused the advisory firms to take money from the BDCs in violation of the contracts and in breach of fiduciary duties the advisory firms owed to the BDCs.

The SEC also claims that Mr. Kokesh caused the BDCs to file false and misleading SEC reports that concealed the truth about the money the advisory firms were receiving from the BDCs, and that he caused the BDCs to file false and misleading proxy statements. A proxy statement is a document that an entity, such as a BDC, uses to allow shareholders (or, in some cases, limited partners) to vote on issues requiring shareholder/partnership approval without requiring all those persons to attend a meeting in person. The SEC claims that Mr. Kokesh signed and disseminated false and misleading proxy statements to allow the advisory firms to receive reimbursement for officer salaries. The SEC claims that the proxy statements were false and misleading because they misrepresented the potential financial impact on the BDCs.

Finally, the SEC claims that Mr. Kokesh caused the advisory firms to enter, extend, renew, or perform contracts with the BDCs that contained illegal performance-fee provisions. The SEC claims that all of the above conduct constituted violations of various securities laws.

Mr. Kokesh denies the SEC's claims. He claims that each of the BDCs had either an Individual General Partner or a Management Committee that retained full, exclusive, and complete discretion in the management and control of the BDC. He contends that neither he nor any representative of the advisory firms ever served as an Individual General Partner of a BDC, nor ever held or controlled any majority voting power on the Management Committee of a BDC. Mr. Kokesh contends that the advisory firms did nothing more than furnish investment advice to the BDCs pursuant to their advisory contracts.

Mr. Kokesh denies that that he caused the BDCs to pay distributions, performance fees, or expense reimbursements to the advisory firms in violation of the advisory contracts. He claims that he did not play any substantive role in preparing the proxy statements and other reports, but merely signed them electronically at the direction of the Individual General Partners and Management Committees. He generally denies violating, or aiding and abetting violations of, the securities laws.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**